## STATE v CALA et

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17333.   Decided Jan. 11, 1940.

Frank T. Cullitan, Cleveland; Neil W. McGill, Cleveland, and John P. Butler, Cleveland, for appellee.

M. A. Picciano, Cleveland; Joel Krupman, Cleveland, and E. E. Greenblatt, Cleveland, for appellants.

## OPINION

By MATTHEWS, J.

The appellants were found guilty of rape and sodomy. In their briefs in this court they make the concession that "The facts upon which the indictment is predicated conclusively show that on the night in question, the prosecutrix, a young lady 25 years of age, was subjected to three separate and distinct attacks," etc. There is, therefore, no issue in this court as to the sufficiency of the proof of the corpus delicti.

The jury found that the defendants were the perpetrators—personally or vicariously—of these attacks. They assail that finding, claiming that it predicated upon various errors:

(1) The indictment charged that the six defendants committed these offenses. They were tried jointly. To enlarge the scope of admissible evidence the state sought to establish a conspiracy or concerted action to commit a crime or crimes of this nature and that these crimes were committed in pursuance of the common design. At a certain point in the introduction of the evidence the question was raised as to whether sufficient evidence of a conspiracy or common design had been introduced to make competent the acts and words of each against all. The court was required to determine whether there was sufficient evidence for that purpose and to inform counsel of his conclusion. There was no request that the jury be excused during the discussion. Objection is now made that when the prosecutor asked the court "Doesn't Your Honor feel that there was a conspiracy from the very first inception of the act?" the court answered: "Perhaps. Not at this time. It may appear later on." There was no objection to this remark at the time. The colloquy between court and counsel for the state and defense on the subject of conspiracy continued and the court said during this colloquy: "After all, it is for the jury to determine whether or not there was a conspiracy. That is one of the facts which will be submitted to the jury." And the court did submit the issue to the jury and charged correctly as to what constituted a conspiracy and the responsibility of co-conspirators for the acts of one another. We find no prejudicial error in this respect.

(2) In response to the request of the jury for further instructions on the subject of conspiracy, the court repeated the charge already given relating to that subject, and then asked the jury whether there was "anything further that you want?—Does that clarify the situation?—Does that answer your question?" and the foreman answered in the affirmative to all the questions. The court thereupon said:

"Now, then, as I said to you before, should you find these defendants guilty of conspiracy to commit the crime of rape, you would so indicate by your verdict. You will then proceed to consider the question of whether or not they may be guilty of sodomy and you will consider that question. It will be possible for you, under the charge given by the court, to consider whether or not they are guilty of both of these crimes, and the finding by your body of guilt in connection with rape and of sodomy would not be inconsistent and would, I think, be amply supported under the charge given by the court. If there is nothing further, you may retire."

Counsel for defendants excepted to these remarks.

Now, in determining whether these remarks constituted an expression of the Judge's opinion that the defendants were guilty, the circumstances must be considered. Certainly, they do not constitute a direct statement. The court

was engaged in instructing the jury and endeavoring to clarify his charge on the subjects of conspiracy, and, aiders and abettors. What he said was expressed in terms of a hypothesis. He submitted the question to the jury and said that a finding of guilty of both rape and sodomy "Would, I think, be amply supported under the charge given by the court."

Now if the court did not think the evidence justified a charge, he should not have given it. The fact that he did give it was a tacit statement that it, the evidence, justified it. The court's express statement of the ▮▮▮▮▮▮ inherent meaning of his action does not, in our opinion, constitute an expression that the evidence proved the defendants guilty of the offenses stated hypothetically in the charge.

It is not necessary for the court to approve this language. We are called upon to determine whether it operated to the prejudice of the appellants as an expression of an opinion that the evidence proved them guilty. We are of the opinion that the record does not show substantial prejudicial error in this respect.

(3) It is claimed that the court failed to state in one part of the charge that the conviction required proof beyond a reasonable doubt. A reading of the charge shows that the court clearly stated this sine qua non for a verdict of guilty.

(4) Error is claimed based on the refusal of the court to charge on "the manner or method in which the jury should receive testimony ▮▮▮▮▮▮ of an accomplice." Whether a charge should be given on this subject rests in the sound discretion of the trial judge. **State v Reichert, 111 Oh St 698.** We cannot say the court abused its discretion in this case.

(5) **Sec. 13437-29, GC,** authorizes the court to amend an indictment "provided no change be made in the name or identity of the crime charged." The amendment made in this case is amply authorized by that section.

(6) The motions to quash were properly overruled. There ▮▮▮▮▮▮ was no misjoinder of offenses. In our opinion, the joinder is authorized by §13437-3, **GC.**

(7) Prior to the trial, the appellants requested the court for an order requiring the prosecuting attorney to permit them to inspect and make a copy of confessions. The court denied this request, and this is assigned as error.

These confessions were introduced in evidence, and while the defendants objected, to their introduction, it was not on the ground that they had been denied the right of inspection. If the appellants had an absolute right to inspect and this was denied them, the penalty according to §11352, **GC,** would be the exclusion of the confessions as evidence. It would seem that the objection to their introduction should have been made at the time the state offered them. This was not done, and the failure so to do constituted a waiver.

But, were the defendants entitled to an inspection as a matter of absolute right? Prior to the passage of the Criminal Code of 1929 (**113 Ohio Laws, 185**), it is clear they were not entitled to an inspection under any circumstances. This was decided in **State v Yeoman, 112 Oh St 214.** Now has the Criminal Code of 1929 changed this rule? By §13444-1, **GC,** which is a part of the Code passed in 1929, it was enacted that "The rules of evidence in civil causes in so far as the same are applicable, shall govern in all criminal causes, except as otherwise provided in this code." It is claimed that this enactment makes §11552, **GC,** applicable in a criminal trial. That section is found in chapter 3, of division 111 of Title IV. The chapter is entitled "Evidence", and is a part of the Code of Civil Procedure. By that section, it is enacted that:

"Either party, or his attorney, in writing, may demand of the adverse party, an inspection and copy, or permission to take a copy of a book, * * * or document in his possession or un-

der his control, containing evidence, relating to the merits of the action or defense * * *. If compliance with the demand within four days be refused, on motion and notice to the adverse party, the court or judge may order the adverse party to give the other within the time specified, an inspection and copy * * *. On failure to comply with such order, the court may exclude the paper or document if offered in evidence * * *. This section shall not prevent a party from compelling another to produce any book,—or document when he is examined as a witness."

It is said that the Supreme Court has indicated in **State v Fox, 133 Oh St 154,** that this section is applicable in criminal trials, and that it gives the defendant an absolute right to an inspection. The syllabus to that case contains nothing whatever on the subject, and the most that can be said is that the judge was of the opinion that the section was applicable. He did not say that the court was required under all circumstances to grant the request. That question was not involved.

It is manifest from a casual reading of the section that the language is that of permission. The language is that the court "may order" the adverse party to give the other party within "the time specified" a copy or inspection. Who will specify the time? Manifestly, the Court. And then if the order is not complied with the court "may exclude" the document if it is offered in evidence. All this is language appropriate for vesting power or discretion in the trial court, to be exercised in the light of all the surrounding circumstances under which the request is made. It conveys no thought of a non-discretionary duty. That this is the usual meaning of the word "may" is unquestioned. We have found no Ohio civil case construing it otherwise as used in §11552, GC. In Titus v City of Montesano, 106 Wash., 608, 181 P. 43, the court held that a statute providing that the court "may order and direct" a physical examination was not mandatory, but made it discretionary with the court as to whether such examination should be ordered. The court at 610 said: "unless it is shown that some necessity exists for the examination at the time application is made, the appellate court cannot say it is an abuse of discretion to deny it."

In 59 C. J., 1079, the rule is stated that:

"As a general rule the word 'may' when used in a statute is permissive only and operates to confer discretion, while the word 'shall' is imperative, operating to impose a duty which may be enforced."

There are abundant reasons for leaving it to the discretion of the court in a criminal case that would not obtain in a civil action. The public interests are involved, and while such interests can never be pushed to the point of a denial of a fair trial conformable to due process of law, they should be considered in construing and applying a statute under which a defendant claims a right never before accorded and to which he has no constitutional right.

If what we have said is sound, then the review of the action of the trial court is limited to a determination of whether there had occurred an abuse of discretion. That could only be determined when there is presented by bill of exceptions, or otherwise, the facts existing at the time and brought to the attention of the court, and upon which the court acted. Failing that, a reviewing court must be guided by the rule that error must not be presumed.

There are other assignments of error. We have examined them all and are of the opinion that they are not substantial, and that the defendants received a fair trial and that no prejudicial error intervened.

For these reasons, the judgment of conviction is hereby affirmed.

HAMILTON, PJ. & ROSS, J., concur.